**William J. WADE, Trustee, Appellant,**

v.

**The CITY OF OKLAHOMA CITY, Appellee.**

**No. 81535.**

Court of Appeals of Oklahoma, Division No. 3.

Feb. 8, 1994.

Rehearing Denied March 1, 1994.

Certiorari Denied April 19, 1994.

Lawrence A.G. Johnson, Tulsa, for appellant.

James G. Hamill, Mun. Counselor and Rita Douglas Talley, Asst. Mun. Counselor, Oklahoma City, for appellee.

## *OPINION*

HUNTER, Presiding Judge:

Appellant filed an *in rem* proceeding against an individual for foreclosure of a purchase money first mortgage on property located in Oklahoma County. The mortgage interest was filed in Oklahoma County on June 9, 1991. Appellee (City) filed a "dilapidation" lien against the property, recorded after the filing of Appellant's lien. The facts being undisputed, the parties filed counter motions for summary judgment. Appellant claimed the statute under which City asserted priority of lien, 11 O.S.1991 § 22–112, was unconstitutional as violative of the Contracts Clause of the United States Constitution, U.S. Const., Art. I, 10, cl. 1. City responded that, in this case, the City's duties under its Police Power rendered the prohibition of impairment of contracts subservient, and that the legislative intent expressed by the dilapidation statute, 11 O.S.1991 § 22–112 was constitutionally firm and should be enforced. The trial court granted City's motion for summary judgment. We affirm.

## *CONSTITUTIONAL PROVISIONS*

The Contracts Clause of the United States Constitution, Art. I, Sec. 10, cl. 1, states:

No State shall enter into any treaty, alliance, or confederation; grant letters of marque and reprisal; coin money; emit bills of credit; make anything but gold and silver coin a tender in payment of debts; pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts, or grant any title of nobility.

Oklahoma's Constitution contains a parallel Contracts Clause at Art. 2 § 15:

No bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed. No conviction shall work a corruption of blood or forfeiture of estate: Provided, that this provision shall not prohibit the imposition of pecuniary penalties.

## *STATUTES AT ISSUE*

Appellant questions the constitutionality of 11 O.S.1991 § 22–112, the statute which authorizes a municipality to dismantle and remove dilapidated structures. The process used, which includes notice to the structure owner and mortgage holder of record, is not at issue. Appellant disputes that part of the statute which gives a municipality a lien against the property for the unpaid costs of the dismantling and removal of the building. In pertinent part, § 22–112(5), states:

Said lien shall be coequal with the lien of ad valorem taxes and all other taxes and special assessments and shall be prior and superior to all other titles and liens against the property.

There are two statutes which Appellant claims bolster his position that the dilapidation statute is unconstitutional. These are found at 42 O.S.1991 §§ 15, 16 which state:

§ 15—Other things being equal, different liens upon the same property have priority according to the time of their creation, except in cases of bottomry and respondentia.

§ 16—A mortgage given for the price of real property, at the time of its conveyance, has priority over all other liens created against the purchaser, subject to the operation of the recording laws.

## *DISCUSSION*

■ The federal constitution's prohibition on state laws which impair the obligations of contracts does not restrict the state's police power, that is, the state's power to protect the public health, morals and safety. *New Orleans Gas–Light Co. v. Louisiana Light & Heat Producing & Manufacturing Co.,* 115 U.S. 650, 672, 6 S.Ct. 252, 264, 29 L.Ed. 516 (1885). Although the language of the Contracts Clause appears absolute, it must accommodate itself to the inherent power of the state "to safeguard the vital interests of its people." *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 410, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983).

■ The stipulated facts reveal that the impaired obligation of contract was the result

of state action, that is, City, by act of state legislation, asserts a superior lien for costs for removal of dilapidated property as against a lien filed prior in time for a purchase money mortgage. *Federal Land Bank of Wichita v. Story,* 756 P.2d 588, 590 (Okl. 1988). The questions we must then answer, according to the test found in *Energy Reserves,* 459 U.S. at 411, 412, 103 S.Ct. at 704, 705 and *Story,* 756 P.2d at 590, 591, are:

1. Has the state law operated as a substantial impairment of a contractual relationship?

2. If the state's regulation constitutes a substantial impairment, does the State, in justification, have a significant and legitimate public purpose behind the regulation?

3. If the legitimate public purpose is identified, is the adjustment of the rights of the contracting parties based upon reasonable conditions and of a character appropriate to the public purpose justifying the adoption of the legislation?

In the instant case, we answer the first question of the test affirmatively. Under other circumstances, a purchase money mortgage holder who filed its lien before any other lienor, has a right to enforce its contract with the property owner for the full extent of the collateral. The state's legislation allowing the lien for the costs of removing a dilapidated structure to be superior to the purchase money, prior filed lien substantially interferes with the contract right between the mortgage holder and structure owner. The statute, 11 O.S.1991 § 22–112 was effective July 1, 1978. The contract at issue was executed and the mortgage reflecting that contract filed in 1991. In Oklahoma, the right of the legislature to act under the police power of the state is a "part of the existing law at the time of the execution of every contract, and as such becomes in contemplation of law a part of that contract." *Sunray DX Oil Co. v. Cole,* 461 P.2d 305, 309 (Okl.1969). We find that although there is a substantial impairment of the obligations of contract, the private parties to the contract were on notice that the state could assert a superior lien for costs of removing dilapidated structures from the property.

Having found the state law substantially impaired the parties' obligations of contract, we ask whether the state has a significant and legitimate public purpose behind the regulation. We answer this question affirmatively also. It is unquestioned that property owners must keep their property located in urban areas at a minimum standard so as not to endanger the health and safety of themselves and their neighbors. Dilapidated structures may be fire hazards, become homes for rats and other wild animals and constitute potential for injury to humans. The state has a significant interest in regulation of the public's health and safety without the requirement of emergency. *Energy Reserves,* 459 U.S. at 412, 103 S.Ct. at 705. The regulation is legitimate because the state is exercising its police power and not providing a benefit to special interests. *Energy Reserves* at 412, 103 S.Ct. at 705.

Now that we have identified a legitimate public purpose, we inquire whether the adjustment of the rights of the contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose for which the law was enacted. We find our law, 11 O.S.1991 § 22–112, is based on reasonable conditions and appropriate to its purpose.

The dilapidation statute, in broad terms, requires the municipality to give notice to the owner and the mortgage holder of its intent to tear down or remove a dilapidated building. The governing body then holds a hearing to determine whether the structure is dilapidated *and* has become detrimental to the health, safety or welfare of the general public (emphasis ours). If there results a finding that the conditions of the building constitute a detriment or hazard and that the property would be benefited by the removal of the conditions, the governing body may cause the removal of the building. The city then fixes a date for commencement and termination of the work and files a notice of dilapidation and lien with the county clerk informing the owner that the lien is for removal costs and the personal obligation of the owner. If the owner does not do the work himself, the city then proceeds with the removal. If the city does the work, it then determines the actual costs of dismantling and removal of the offending structure, including attendant necessary expenses, and informs the owner and mortgage holder of record of the accounting. When the owner

pays the costs incurred, the municipal clerk files a release of lien.

The due process protection afforded the owner and the mortgage holder leads us to find, in light of the purpose of the statute, that the law adjusting the contractual rights of the private parties is based on reasonable conditions. In this instance, we defer to the legislative judgment as to the "necessity and reasonableness of a particular measure." *United States Trust Co. of New York v. New Jersey,* 431 U.S. 1, 22, 97 S.Ct. 1505, 1518, 52 L.Ed.2d 92 (1977).

We hold that the trial court properly granted summary judgment in favor of Appellee. The dilapidation statute, 11 O.S.1991 § 22–112 is constitutionally firm and not violative of the Contracts Clauses of the Constitutions of the United States of America or of the State of Oklahoma. We affirm the judgment of the trial court.

AFFIRMED.

BAILEY, J., concurs.

GARRETT, Vice Chief Justice, dissenting:

I agree with Appellant that the statute relied on by the City is unconstitutional.